## UNITED STATES v. LIBICHIAN et al.
### No. 7094.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1940.

TREANOR, Circuit Judge, dissenting.

James R. Fleming, U. S. Atty., of Fort Wayne, Ind., and Luther M. Swygert, Asst. U. S. Atty., of Hammond, Ind., Alexander M. Campbell, Asst. U. S. Atty., of Fort Wayne, Ind. (Joseph Lawrence, Director, Bond and Spirits Division, Harry B. DeAtley, Assistant to Director, Bond and Spirits Division, Webster Spates, Chief Field Attorney, and George B. Davis, Attorney, Bond and Spirits Division, all of Washington, D. C., of counsel), for appellant.

John W. Lyddick and Sheehan & Lyddick, both of Gary, Ind., for appellees.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal by the United States from an order annulling and remitting a final judgment rendered on an estreated recognizance bond. The proceeding was instituted by petition predicated upon Sec-

tion 601, Title 18, U.S.C.A.,[1] entitled "Remission of penalty of recognizance." The court, by interlocutory order of May 12, 1939, overruled appellant's motion to dismiss the petition, and after hearing, on June 17, 1939, entered its final order. Both orders are involved in the appeal, but there seems to be no question but that the evidence supports the allegations of the petition so that the essential question on this appeal results from the action of the court in overruling appellant's motion to dismiss.

The defendant, Libichian, was charged by indictment with a violation of the National Prohibition Act, 41 Stat. 305, 27 U.S.C.A. § 1 et. seq. He and his sureties, who are the appellees, filed a recognizance bond for his appearance to answer said indictment. This bond was defaulted on November 10, 1932; a writ of scire facias issued on December 19, 1932, and, according to the return thereon, was, on January 17, 1933, served personally on the sureties but not on Libichian. No appearance and answer were made to the writ by any of the parties. On March 16, 1934, subsequent to the repeal of the National Prohibition Act, and while the scire facias proceedings were still pending unanswered, an order of nolle prosequi was entered on the Government's motion. On March 26, 1936, final judgment in the scire facias proceedings was entered against the sureties (appellees). The petition for annulment of the judgment and for remission of the penalty was filed by appellees on February 6, 1939.

The petition, in addition to the above related facts, alleged that Libichian "did not wilfully and intentionally fail to appear before the court in the said criminal cause at any time, and, that he did not abscond in any manner," and "that he was absent from the court on the day the bond was forfeited solely because and for no other reason than that he did not know, or have any knowledge, that said cause was set for appearance or trial at the time, and was not personally informed thereof, and did not, at any time, have any attorney in the matter and case." The petition also alleged that Libichian at all times subsequent to the time of his arrest, resided in Gary, Indiana and, that his first knowledge or information of the dismissal of the cause was received at a time when he made application for naturalization papers in 1937 or 1938. It was alleged that none of the sureties knew of the bond default until December, 1938, when the matter was called to their attention upon an examination of the title to their property preparatory to a transfer of the same. Libichian offered to have the dismissal of the case vacated and stand trial, and alleged the payment of all costs in the forfeiture proceeding. At the hearing it was shown without contradiction, that Libichian was unable to employ counsel and, that he expected to be notified when he was to appear for trial.

The motion to dismiss, as well as this appeal, raises two questions, (1) that appellees' petition failed to show a compliance with the Remission Statute, and (2) that the court was without jurisdiction to entertain the petition for the reason that it was presented subsequent to the expiration of the term of court at which the final judgment was entered in the forfeiture proceeding.

■ We shall first consider the second question. Appellant argues and cites numerous cases in support of its contention that a court is without jurisdiction to set aside, modify or correct a final judgment entered at a previous term. That this is a general rule can not be doubted—in fact, it is conceded to be such by appellees. It is argued by appellees, however, that the language of the provision in question creates an exception to this general rule. The words specifically relied on are "whenever it appears to the court." While the numerous cases called to our attention disclose some contrariety of opinion, we are convinced the weight of authority is in appellees' favor. One of the early cases is that of United States v. Traynor, D.C., 173 F. 114, 115, where the court, with reference to the precise question, said: " * * * There is nothing in this statute indicating any intention to limit the power of the court in this matter to the term at which a judgment is rendered, and, in view of the use of the broad and unrestricted term 'whenever,' I think the statute must be construed as vesting discretion in the court

1 "When any recognizance in a criminal cause, taken for, or in, or returnable to, any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty, whenever it appears to the court that there has been no willful default of the party, and that a trial can, notwithstanding, be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

* * *." The provision was similarly construed in United States v. Jenkins, 4 Cir., 176 F. 672, 679, 20 Ann.Cas. 1255; United States v. Smart, 8 Cir., 237 F. 978, 982; Griffin v. United States, D.C., 270 F. 263, 265; United States v. O'Leary, D.C., 275 F. 202; and Henry v. United States, 7 Cir., 288 F. 843, 32 A.L.R. 257.

Appellant stresses the case of Sun Indemnity Company v. United States, 3 Cir., 91 F.2d 120, as sustaining its side of the question. In fact, this is the only authority relied upon other than those announcing the general rule. A study of the case, however, discloses that the support afforded appellant's contention is of a dubious nature. There, scire facias issued and judgment was entered thereon without appearance by the surety. Thereafter, the case against the principal was nolle prossed. Three years later the surety petitioned to cancel the judgment. As the opinion discloses, it was the contention of the surety that the scire facias failed to state a cause of action and, that the court was therefore without jurisdiction to enter the judgment. The cause was tried upon that theory. In denying the contention, the court held that if the judgment was erroneous, it should have been attacked by direct appeal, and that the District Court was without jurisdiction to vacate at a subsequent term. There the surety attacked the validity of the judgment, while in the instant case the validity of the judgment is not under attack but rather the authority of the court to remit the judgment. It seems to us that the confused state of the authorities is due largely to the failure of courts to recognize this distinction. Where the validity of the judgment or forfeiture proceeding is attacked, it amounts to a plea in bar, and a judgment rendered in such instance is final and can be reviewed only by appeal. On the other hand, the Remission Statute recognizes the validity of the forfeiture proceeding and confers authority upon the court to relieve the surety who shows compliance therewith.

The court, in United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559, appears to have recognized such distinction. After discussing the legal defenses which might be interposed, the court, referring to the Remission Statute, 295 U.S. on page 489, 55 S.Ct. on page 817, 79 L.Ed. 1559, said: "* * * At best, remission of the forfeiture is granted as an act of grace. The remedy for that reason is by motion or petition, not by answer and a plea in bar. * * *"

Our own judgment in the matter is in harmony with what appears to be the weight of authority. The provision confers jurisdiction "whenever it appears to the court," and an interpretation which limits this language solely to the term at which judgment was rendered would come near to rendering it meaningless. The statute is remedial, and to hold the court without jurisdiction, regardless of circumstances, subsequent to the adjournment of the term would thwart its purpose. We think the intention of the statute clearly is to the contrary.

In this connection, it is also argued by appellant that the statute provides only for the remission of the penalty described in the recognizance and, that it can have no application in a case such as the instant one where such penalty is merged in a final judgment. In other words, so it is argued, the penalty, after merger in the judgment, is extinguished. We do not think there is any merit in such contention. It would seem to us the situation is similar to a suit in debt evidenced by a note. It is true the note is merged in the judgment, but it is the same debt evidenced in a different manner. The penalty named in the recognizance likewise is merged in the judgment, but it is the same penalty evidenced by the judgment rather than the recognizance. That defendant's argument in this respect is not tenable also appears from the fact that such a construction would preclude the court at the same, as well as a subsequent, term from allowing relief under the Remission Statute.

We now come to the Government's contention that appellees failed to comply with the terms of the Remission Statute. The courts generally are in accord that a court has authority to grant relief under such provision only when the following conditions exist: (1) That the default of the principal must not be wilful, (2) that trial can be had, and (3) that public justice does not require the enforcement of the penalty. United States v. Capua, 7 Cir., 94 F.2d 292, 294; United States v. Nordenholz, 4 Cir., 95 F.2d 756, 758; United States v. Costello, 6 Cir., 47 F.2d 684, and Sun Indemnity Company v. United States, supra. It is equally well established by these and other authorities that the burden of showing compliance

with the statute rests upon the surety seeking relief. The gist of appellant's argument is premised upon the alleged failure of appellees to show by their petition that the default of the principal was not wilful. As related heretofore, the petition expressly averred that he "did not wilfully and intentionally fail to appear," but it is argued that this allegation is limited by the language which follows, to the effect that he was absent from the court on the day the bond was forfeited because he had no knowledge or information that his case was set for trial at that time.

Appellant relies upon authorities which hold that a failure to receive notice of time and place of trial is no defense to a forfeiture proceeding. Typical of such cases is Western Surety Co. v. United States, 9 Cir., 51 F.2d 470, 472, where the court said: "It is not a prerequisite to the forfeiture of a bail bond that the defendant be notified or that, in the court-room, he be called to answer. It is his duty to follow the proceedings and to be in court when his presence is required. * * *"

Here again appellant fails to distinguish between matter which may be plead in bar of a forfeiture proceeding, and matter which may negative the wilful default of the defendant upon invocation of the Remission Statute.

■ As was said in United States v. Mack, 295 U.S. at page 488, 55 S.Ct. at page 817, 79 L.Ed. 1559, supra: "* * * 'If the condition of the bail bond is broken by the failure of the principal to appear, the sureties become the absolute debtors of the United States for the amount of the penalty.' * * *"

Thus it appears that in a forfeiture proceeding by scire facias or otherwise, it is no defense that the defendant was absent without fault on his part. The reason or excuse for his non-appearance is immaterial. By the terms of the Remission Statute, however, we find the reverse. The reason for the default is of controlling importance. If not wilful, one of the conditions, and perhaps the most important one entitling the surety to relief, has been met.

■ Anyone who has had even slight experience in trial court procedure, knows that a defendant under bond is not expected to be in court at all times. Such a requirement would necessitate the enlargement of most, if not all, of the court rooms of the country. Especially would this have been true during the period of national prohibition. It is equally well known that cases are set for hearing and the defendants or their attorneys notified thereof. In a situation such as the instant one, the allegation of failure to appear for want of notice, does, in our opinion, negative the idea that his absence was wilful.

■ It is also urged that the petition, on its face, discloses that no "trial can be had" for the reason that the indictment had been dismissed after the repeal of the Prohibition Act. In support of this argument, United States v. Nordenholz, supra, is relied upon. True, the court, on page 758 of 95 F.2d, said: "* * * Nor is it pertinent that the government had the case dismissed. * * *" It appears such a conclusion was not necessary to decision in that case, but if so, we do not agree.

In our opinion, to hold that a court is without authority to grant relief where a "trial can not be had" solely because of the action of the Government in dismissing the prosecution, can be supported by neither reason nor logic. Such a construction would place in the hands of the Government a means to make every forfeiture final, and the sureties without remedy either at the same or subsequent term. No matter how valid an excuse the defendant might have for his failure to appear, the hand of the court would be stayed merely by the act of dismissing the prosecution and saying to the defendant and his sureties, "No trial can be had." As already shown, the sureties upon default, became the debtors of the United States. By repeal of the Eighteenth Amendment, the court was deprived of jurisdiction to try such cases. United States v. Chambers et al., 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510. Thus, by the act of the Government, to whom the debt was owing, one of the conditions of the Remission Statute was made impossible of performance. To construe the statute so that the Government may take advantage of a situation of its own creation is repugnant to any rule of interpretation of which we are familiar. Certainly it was not the intention of Congress, in the enactment of this legislation, to specify a condition impossible of performance because of the act of the Government. We think the language "trial can be had" may be properly construed to mean, insofar as the acts of the defendant have not created a situation precluding a trial of his case. As was said in United States v. Katz et al., 271

U.S. 354, 357, 46 S.Ct. 513, 514, 70 L.Ed. 986: "All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose. * * *"

█ It is also argued there is no showing "that public justice did not require the enforcement of the penalty." This requirement is legal rather than factual. We are of the opinion that a conclusion favorable to appellees properly arises from the facts. It is of interest, and we think pertinent, to note that final judgment was not entered on the scire facias until more than three years after its issuance. The instant petition was filed almost three years after that, during which time there was not, so far as the record discloses, any effort made to collect the judgment. Also, in the meantime, the law which the defendant was charged with violating was repealed, and the charge against him nolled. The costs of the proceeding had been paid so that appellant was without damage or cost. Under such circumstances, we agree with the District Court that public justice did not require the enforcement of the penalty.

We conclude that the discretion vested in the District Judge was appropriately exercised in favor of appellees.

The orders appealed from are therefore affirmed.

TREANOR, Circuit Judge (dissenting).

I am of the opinion (1) that the allegations of fact in the complaint and the evidence presented at the hearing do not satisfy the statutory conditions for "remission of penalty of recognizance"; and (2) that the authority of the District Court to remit the penalty of the recognizance does not include the power to annul and vacate the judgment in the scire facias proceedings after the term of court at which the judgment was entered.

This Court in United States v. Capua et al., 7 Cir., 94 F.2d 292, 294, made the following statement respecting the remission statute: "Under this statute, before the court may grant relief, three conditions must be present. First, there must have been no willful default of the principal; second, it must be possible that a trial can be had, notwithstanding the default; and, third, it must be shown that public justice

does not require that the penalty be enforced."

The allegations of the complaint, and the evidence introduced, disclose that the showing of "no wilful default of the party" rested entirely upon the fact that defendant, Libichian, was without information that his cause "was set for appearance or trial at any time * * *." I do not believe that such a showing is sufficient. Defendant, Libichian, was required by law to know the day for appearance or trial and his sureties were bound under the law to have the defendant in court when his presence should be required. Something more than the personal neglect of his duty under the bond must be the influence which prevents defendant's appearance in order to render his default "not wilful."

Under the circumstances presented by the record the second condition was not met. This point involves the effect of an order of nolle prosequi in the principal case which was entered on the government's motion March 16, 1934. The order was predicated on the decision of the Supreme Court in the case of United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, which decision held that the repeal of the 18th Amendment, as of December 5, 1933, took away the power of the Federal Government to continue or to initiate prosecutions under the National Prohibition Act, 41 Stat. 305. But the bond involved in this proceeding was defaulted on November 10, 1932; a writ of scire facias had issued on December 19, 1932, and was served personally on all of the defendants on January 17, 1933, except Libichian, who could not be found. None of the defendants made appearance or filed an answer to the writ of scire facias. On March 26, 1936, final judgment was entered against the four sureties who had been personally served.

It is clear that a trial cannot be had in the cause now and could not have been had at any time after repeal of the 18th Amendment on December 5, 1933.

The order of nolle prosequi was not a voluntary act of the appellant based upon any fact related to the prosecution of the cause. I assume that if the obligee of the bond, the United States Government, voluntarily had dismissed the suit and thereby, without fault of the defendant, had made it impossible to have the trial, the United States Government could not thereafter insist upon an enforcement of the penalty

of the bond. There is nothing in the record from which it can be inferred that the trial would not have been had prior to December 5, 1933, if the defendant had not defaulted. It would seem to be necessary for the defendants, who are seeking to be released from the penalty of the bond, to show that apart from the default of Libichian, the trial could not have been had prior to the repeal of the 18th Amendment.

But even if appellees had been able to meet the conditions of the Remission statute, there remains the further question of the power of the District Court to annul the final judgment in the scire facias proceeding which had been rendered in favor of the United States and against the sureties who had been served personally. The Circuit Court of Appeals for the Third Circuit in Sun Indemnity Co. of New York v. United States, 3 Cir., 91 F.2d 120, 121, stated that a judgment on a writ of scire facias for the penalty of a bond is "in the position of any other rendered in a term which has now expired." And the Court further stated that "it is well settled that in such cases a District Court is without jurisdiction to open or vacate a judgment." The Supreme Court stated in United States v. Mack, 295 U.S. 480, 488, 55 S.Ct. 813, 817, 79 L.Ed. 1559, that "if the condition of the bail bond is broken by the failure of the principal to appear, the sureties become the absolute debtors of the United States for the amount of the penalty." It would seem to follow, necessarily, that a judgment of the United States for the amount of the penalty against "the absolute debtors of the United States" would be in the strictest sense a money judgment and that the legal consequences of such a judgment would be the same as the legal consequences of any money judgment.

The Remission statute represents a legislative restriction upon the power of courts to relieve defaulting defendants from the penalty of the bond which has been breached. I agree that the power of the court to relieve from the penalty of a forfeiture is not limited to the term at which the default occurs, but I cannot agree that

the language of the statute which authorizes remission of the penalty after breach reasonably can be construed to authorize the District Court to vacate a money judgment for the penalty after the expiration of the term at which the judgment was entered. The fact that the practical result of vacating the judgment is to relieve from the penalty is no sound legal justification for disregarding the rules of law which control judgments. There are many situations in which a trial court in the exercise of its discretion may set aside defaults or orders, which have not ripened into final judgments, long after the term at which the default has been taken or the orders made. But when a final judgment has been entered, it does not follow that that judgment may be vacated at some subsequent term and the default set aside, or the order vacated, even though the practical result would be the same as if the court had set aside the default or vacated the order before final judgment. No matter what language we use to describe the result, the fact is that a trial court cannot remit in whole or in part the penalty of a bond after judgment therefor without judicially annulling the judgment.

The Supreme Court consistently has adhered to the rule that after term the final judgments and decrees of the trial court have passed beyond its control, "unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; * * *." Bronson v. Schulten, 104 U.S. 410, 415, 26 L.Ed. 797. No sound legal reason has been suggested why this rule should be departed from in the case of a judgment in a suit for the penalty of a bond, even though the penalty might have been remitted upon a proper showing prior to the rendition of judgment.

I feel that nothing less than a definite statement of legislative intention would justify our construing the language of a statute to confer upon a District Court discretion to vacate judgments, in any class of cases, during an indefinite period of time after the close of the term at which the judgments have been rendered.